IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LEANNETTE SCOTT, | ) |
| aka LEANNETTE PICKENS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**COMPLAINT**

Plaintiff United States of America, at the request of a delegate of the Secretary of the Treasury and at the direction of a delegate of the Attorney General, pursuant to 26 U.S.C. §§ 7401 and 7407, brings this action seeking an injunction barring Leannette Scott, aka Leannette Pickens, from engaging in the business of preparing federal tax returns and employing any person acting as a federal tax return preparer. In support of this action, the United States alleges as follows:

**Jurisdiction and Parties**

1. Jurisdiction exists under 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. ("Internal Revenue Code" or "I.R.C.") §§ 7402 and 7407.

2. Scott resides in South Chicago Heights, Illinois, within the jurisdiction of this Court.

3. Scott prepares tax returns at her home and has prepared returns at her previous home in Sauk Village, Illinois and at business locations in Steger, Illinois and Chicago Heights, Illinois, all within the jurisdiction of this Court.

1

**Overview of Scott's Tax Preparation Practices**

4. Scott prepares federal income tax returns for others as a paid income tax preparer.

5. On information and belief, Scott has no formal training in income tax preparation.

6. Scott's customers know her as "Nette," "Leannette," "Nette Scott," or "Annette Scott." Her customers met with Scott at her home in Sauk Village, Illinois; an office location in Steger, Illinois; or an office located in South Chicago Heights, Illinois. Some taxpayers spoke with Scott over the phone only.

7. After speaking with her customers, Scott creates a user account with TurboTax with the taxpayers' information and uses the TurboTax website to prepare their returns.

8. Scott tells the taxpayers the amount of their tax refund, but she does not review the prepared income tax returns with her customers.

9. Scott generally charges her customers a $200 to $600 fee to prepare each original or amended federal income tax return. Scott often instructs her customers to pay her in cash.

**Scott's Efforts to Conceal Her Tax Preparation Activities**

10. A firm or individual who files eleven or more Forms 1040 and/or 1041 during any calendar year must obtain an Electronic Filing Identification Number (EFIN) to electronically file tax returns. The IRS issues an EFIN to individuals or firms that were approved as authorized IRS e-file providers, after the firm or individual submitted an application and the IRS determined that they met the eligibility criteria and passed a suitability check. The IRS assigns paid tax return preparers a unique identification number called a Preparer Tax Identification Number (PTIN). A paid preparer must include her PTIN on federal income tax returns or claims for refund that she prepares for her customers. The IRS uses EFINs and PTINs to identify tax preparers.

11. Scott has never applied for, and does not have, an EFIN or a PTIN assigned by the IRS.

12. Scott did not complete the "Paid Preparer Only" section of any return she prepared between 2016 and 2020 that the IRS reviewed.

13. Scott did not affix Form 8867, Paid Preparer's Due Diligence Checklist, to any return that she prepared between 2016 and 2020.

14. Due to Scott's failure to identify herself in any way as a paid preparer on the returns she prepared, the true scope of Scott's tax return preparation activities is unknown.

15. Scott's instructions to her customers to pay her in cash is intended to conceal, or has the effect of concealing, the extent of Scott's tax preparation activities.

16. In a further effort to conceal her identity as a paid tax return preparer, Scott reports on her own federal income tax returns that she is employed as a hairstylist and does not report any income she earns from her tax preparation business.

17. The IRS has determined that from 2016 through 2020, for tax years 2015 through 2019, Scott transmitted to the IRS for filing at least 562 original or amended Forms 1040.

**Scott's False and Fraudulent Return Preparation Schemes**

18. The IRS assigned a Revenue Agent to investigate Scott's return preparation practices for income tax returns she prepared for tax years 2015 to the present.

19. As part of Scott's preparation of false and fraudulent Forms 1040 and 1040X, she claims education credits to which her customers are not entitled because the customers did not attend college or incur any tuition-related expenses in the relevant tax year (the "Education Credits Scheme").

20. As part of Scott's preparation of false and fraudulent Forms 1040 and 1040X, she prepares Schedule C forms, which are used to report business income and expenses for an individual taxpayer's sole proprietorship, for businesses that did not exist (the "Business Expenses Scheme").

21. Throughout the course of the IRS investigation of her tax return preparation practices, Scott has been uncooperative. Scott failed to appear for a scheduled interview with the IRS or provide documents in response to the IRS's information document request. Since failing to appear for her interview, Scott has not responded to any of the IRS agent's attempts at contact.

22. The IRS has determined that from 2016 through 2020 Scott prepared at least the following tax returns for income tax years 2015 through 2019:

| Processing Year | Tax Year | Number of Returns | Amount of Refunds | Percentage of Returns Claiming Education Credit | Percentage of Returns Claiming Schedule C Credit |
| --- | --- | --- | --- | --- | --- |
| 2016 | 2015 | 63 | $372,703 | 89% | 59% |
| 2017 | 2016 | 117 | $725,024 | 71% | 61% |
| 2018 | 2017 | 75 | $487,616 | 91% | 64% |
| 2019 | 2018 | 161 | $963,682 | 98% | 61% |
| 2020 | 2019 | 146 | $660,752 | 64% | 43% |

23. IRS Revenue Agents interviewed twenty-one of Scott's customers to determine the accuracy of the items reported on the filed federal income tax returns that she prepared for processing year 2019 (income tax year 2018).

4

24. Seventeen of the twenty-one returns of the interviewed customers contained incorrect and false information. Scott used the Education Credits Scheme on all seventeen returns, and she used the Business Expenses Scheme on three of those returns.

25. As a result of the interviews, the IRS determined that the income tax returns of those seventeen interviewed customers underreported those customers' income tax liabilities by $39,287 – an average underreporting of $1,871 for each return – due to Scott's including false or fraudulent information on her customer's returns.

26. Some specific examples of Scott's fraudulent tax preparation activities are as follows:

**CUSTOMER 1**

27. CUSTOMER 1, of Ford Heights, Illinois, was employed in 2018 by two different companies, both of which issued CUSTOMER 1 a Form W-2. Scott prepared CUSTOMER 1's tax return for tax year 2018.

28. CUSTOMER 1's 2018 tax return claimed a $7,913 refund that included $2,000 of fabricated education credits on Form 8863, listing CUSTOMER 1 and CUSTOMER 1's dependent as students at Prairie State College. The Form 8863 fraudulently stated that CUSTOMER 1 paid $8,000 in tuition.

29. Neither CUSTOMER 1 nor CUSTOMER 1's dependent attended a college or university in 2018. They have never attended Prairie State College. CUSTOMER 1 did not tell Scott or provide Scott with any documentation stating that CUSTOMER 1 or CUSTOMER 1's dependent attended Prairie State College or another college or university in 2018.

30. Scott reported false education credits on CUSTOMER 1's tax return in order to falsely increase CUSTOMER 1's tax refund for tax year 2018.

## CUSTOMER 2

31.    CUSTOMER 2, of Park Forest, Illinois, was employed as a certified nursing assistant in 2018. Scott prepared CUSTOMER 2's tax return for tax year 2018.

32.    CUSTOMER 2's 2018 tax return claimed a $5,748 refund that included $2,331 of fabricated education credits on Form 8863, listing CUSTOMER 2 as a student at Prairie State College. The Form 8863 fraudulently stated that CUSTOMER 2 paid $4,000 in tuition.

33.    CUSTOMER 2 did not attend a college or university in 2018. CUSTOMER 2 attended Prairie State College in 2017 (not 2018) to obtain a GED, but never gave Scott this information. CUSTOMER 2 did not tell Scott or provide Scott with any documentation stating that CUSTOMER 2 attended Prairie State College or another college or university in 2018.

34.    Scott reported false education credits on CUSTOMER 2's federal income tax return to falsely increase CUSTOMER 2's tax refund for tax year 2018.

## CUSTOMER 3

35.    CUSTOMER 3, of Park Forest, Illinois, was employed as a bus driver in 2018. Scott prepared CUSTOMER 3's tax return for tax year 2018.

36.    CUSTOMER 3's 2018 tax return claimed a $4,074 refund based on $1,259 of fabricated education credits on Form 8863, listing CUSTOMER 3 as a student at Prairie State College. The Form 8863 fraudulently stated that CUSTOMER 3 paid $4,000 in tuition.

37.    CUSTOMER 3 did not attended a college or university in 2018. CUSTOMER 3 has never attended Prairie State College. CUSTOMER 3 did not tell Scott or provide Scott with any documentation stating that CUSTOMER 3 attended Prairie State College or another college or university in 2018.

38. CUSTOMER 3's 2018 tax return included a Schedule C reflecting a business described as "childcare" which allegedly incurred a net loss of $15,000.

39. CUSTOMER 3 did not have a business in 2018. CUSTOMER 3 did not tell Scott or provide Scott with any documentation stating that CUSTOMER 3 had a business or incurred any business expenses in 2018.

40. Scott reported false education credits and a false Schedule C on CUSTOMER 3's federal income tax return in order to fraudulently reduce CUSTOMER 3's tax liability and to falsely increase CUSTOMER 3's tax refund for tax year 2018.

## CUSTOMER 4

41. CUSTOMER 4, of Sauk Village, Illinois, was employed by a driving company in 2018. Scott prepared CUSTOMER 4's tax return for tax year 2018.

42. CUSTOMER 4's 2018 tax return claimed a $6,303 refund based on $1,000 of fabricated education credits on Form 8863, listing CUSTOMER 4 as a student at Prairie State College. The Form 8863 fraudulently stated that CUSTOMER 4 paid $4,000 in tuition to Prairie State College.

43. CUSTOMER 4 attended a trucking school in 2018 that is not a qualified educational institution. CUSTOMER 4 has never attended Prairie State College. CUSTOMER 4 provided Scott with CUSTOMER 4's school records and told Scott that CUSTOMER 4 attended trucking school to obtain a commercial driver's license. CUSTOMER 4 did not tell Scott or provide Scott with any documentation stating that CUSTOMER 4 attended Prairie State College or another qualifying college or university in 2018.

44. Scott reported false education credits on CUSTOMER 4's federal income tax return in order to falsely increase CUSTOMER 4's tax refund for tax year 2018.

45. CUSTOMER 4's 2018 tax return contained a Schedule C that reported a business described as "driver" with a net loss of $32,100.

46. CUSTOMER 4 was not self-employed in 2018 and did not own a business. CUSTOMER 4 incurred unreimbursed out-of-pocket expenses for CUSTOMER 4's job, but CUSTOMER 4 did not provide that information to Scott. CUSTOMER 4 did not tell Scott or provide Scott with any documentation stating that CUSTOMER 4 had a business or incurred any business expenses in 2018.

47. CUSTOMER 4 received an additional W-2 that CUSTOMER 4 received after Scott prepared CUSTOMER 4's original 2018 tax return. CUSTOMER 4 provided Scott with the additional W-2 after Scott filed CUSTOMER 4's 2018 income tax return with the understanding that Scott would file an amended 2018 income tax return for CUSTOMER 4. As of November 2020, Scott had not filed an amended 2018 income tax return for CUSTOMER 4.

48. Scott reported false business expenses on CUSTOMER 4's federal income tax return in order to fraudulently reduce CUSTOMER 4's tax liability and to falsely increase CUSTOMER 4's tax refund for tax year 2018.

**CUSTOMER 5**

49. CUSTOMER 5, of Park Forest, Illinois, was employed in retail sales in 2018. Scott prepared CUSTOMER 5's tax return for tax year 2018.

50. CUSTOMER 5's 2018 tax return claimed a $6,815 refund based on $1,239 of fabricated education credits on Form 8863, listing CUSTOMER 5 as a student at Prairie State College. The Form 8863 fraudulently stated that CUSTOMER 5 paid $4,000 in tuition.

51. CUSTOMER 5 did not attended a college or university in 2018. CUSTOMER 5 has never attended Prairie State College. CUSTOMER 5 did not tell Scott or provide Scott with

any documentation stating that CUSTOMER 5 attended Prairie State College or another college or university in 2018.

52. Scott reported false education credits on CUSTOMER 5's federal income tax return in order to falsely increase CUSTOMER 5's tax refund for tax year 2018.

### CUSTOMER 6

53. CUSTOMER 6, of Lynwood, Illinois, was employed as a server in 2018. Scott prepared CUSTOMER 6's tax return for tax year 2018.

54. CUSTOMER 6's 2018 tax return claimed a $10,103 refund based on $2,788 of fabricated education credits on Form 8863, listing CUSTOMER 6 and CUSTOMER 6's dependent as students at Prairie State College. The Form 8863 fraudulently stated that CUSTOMER 6 paid $7,950 in tuition.

55. CUSTOMER 6 did not attended a college or university in 2018, nor did any of CUSTOMER 6's dependents. Neither CUSTOMER 6 nor CUSTOMER 6's dependents have ever attended Prairie State College. CUSTOMER 6 did not tell Scott or provide Scott with any documentation stating that CUSTOMER 6 or CUSTOMER 6's dependents attended Prairie State College or any other college or university in 2018.

56. Scott reported false education credits on CUSTOMER 6's federal income tax return in order to falsely increase CUSTOMER 6'stax refund for tax year 2018.

### Harm to the United States

57. Defendant's customers have been harmed because they paid defendant fees to prepare proper tax returns, but instead defendant prepared false and fraudulent returns that substantially underreported and underpaid the customers' correct tax liabilities, potentially exposing the customers to statutory penalties.

58. The United States has been harmed financially because it has not received, and may never be able to collect, the taxes lawfully due and owing from defendant's customers. During its investigation, the IRS interviewed and reviewed the tax returns for 21 individuals that reported that defendant prepared their income tax returns for income tax year 2018. For the returns of customers it interviewed, the IRS determined a total deficiency of $39,287, with an average deficiency of $1,871 for each return. It is likely that the total underreporting and underpayments caused by defendant are much greater, as the IRS lacks the resources to examine all the returns that defendant prepared.

59. For income tax year 2016, the IRS determined that 89% of the returns Scott prepared, or 56 returns, claimed an education credit and 59%, or 37 returns, included a Schedule C or business expense credit. For income tax year 2017, the IRS determined that 71% of the returns Scott prepared, or 115 returns, claimed an education credit and 61%, or 71 returns, included a Schedule C or business expense credit. For income tax year 2018, the IRS determined that 91% of the returns Scott prepared, or 68 returns, claimed an education credit and 64%, or 48 returns, included a Schedule C or business expense credit. For income tax year 2019, the IRS determined that 64% of the returns Scott prepared, or 93 returns, claimed an education credit and 43%, or 62 returns, included a Schedule C or business expense credit.

60. Defendant further harms the United States because the IRS must devote some of its limited resources to investigating defendant's tax return preparation, including ascertaining their customers' correct tax liabilities, recovering any refunds erroneously issued and attempting to collect any additional taxes and penalties, some of which may not be collectible. The IRS investigation into defendant's activities has thus reduced the resources that would otherwise be available to assist honest taxpayers.

61. In addition to the direct harm defendant has caused the United States by preparing false and fraudulent tax returns, defendant's activities undermine public confidence in the administration of the federal tax system and encourage noncompliance with the internal revenue laws.

62. Defendant also causes intangible harm to honest tax return preparers, over whom defendant gains and unfair competitive advantage by preparing returns that falsely or fraudulently underreport their customers' tax liabilities.

**COUNT 1: Injunction Under I.R.C. § 7407 for Violation of I.R.C. § § 6694 And 6695 for Deceptive or Fraudulent Conduct that Interferes with the Proper Administration of the Internal Revenue Laws**

63. The United States incorporates by reference the allegations in all preceding paragraphs as though fully set forth herein.

64. Pursuant to I.R.C. § 7407, a court is authorized to enjoin a tax return preparer who, among other things, engages in conduct subject to penalty under I.R.C. §§ 6694 or 6695, or who engages in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

65. Additionally, if the court finds that a return preparer has continually or repeatedly engaged in such conduct, and the court further finds that a narrower injunction prohibiting only the enumerated conduct would not be sufficient to prevent further interference with the proper administration of the internal revenue laws, the court may enjoin that person from further acting as a federal income tax return preparer.

66. I.R.C. § 7701(a)(36) defines a "tax return preparer" as a person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return or a substantial portion thereof.

67. Scott is a tax return preparer within the meaning of I.R.C. § 7701(a)(36).

68. I.R.C. § 6694(a) penalizes a tax return preparer if: (1) the preparer prepared a return or claim for refund that included an understatement of liability due to a position for which there was not a realistic possibility of being sustained on the merits; (2) the preparer knew (or reasonably should have known) of such position; and (3) the position was not properly disclosed or was frivolous.

69. I.R.C. § 6694(e) defines understatement of liability to include any understatement of tax due or "overstatement of the net amount creditable or refundable."

70. In violation of I.R.C. § 6694(a), Scott prepared returns for customers that understated her customers' tax liabilities and that she knew or should have known contained positions for which there was no substantial authority or for which there was no reasonable basis.

71. I.R.C. § 6694(b) penalizes a tax return preparer who prepares a return or claim with an understatement of liability: (1) in a willful attempt to understate the liability; or (2) with a reckless and intentional disregard of rules or regulations.

72. In violation of I.R.C. § 6694(b), Scott prepared tax returns for customers that she knew or reasonably should have known contained incorrect figures by engaging in the Education Credit Scheme and the Business Expenses Scheme.

73. In violation of I.R.C. § 6694(b), Scott recklessly or intentionally disregarded rules and/or regulations by manipulating her customers' itemized deductions in order to understate her customers' tax liabilities.

74. I.R.C. § 6695(b) penalizes a tax return preparer who fails to sign a return which she is required to sign. I.R.C. 6695(c) penalizes a tax return preparer who, without reasonable cause or not due to excusable neglect, fails to include an identifying number, such as a PTIN, on a tax return or claim for refund.

75. In violation of I.R.C. §§ 6695(b) and 6695(c), Scott failed to sign and furnish an identification number, as paid preparer, all of the federal income tax returns that the IRS investigation revealed that she prepared and filed.

76. I.R.C. § 6695(g) penalizes a tax return preparer who fails to comply with due diligence requirements imposed by the Secretary, including affixing Form 8867, Paid Preparer's Due Diligence Checklist, to the returns the tax return preparer prepared.

77. In violation of I.R.C. § 6695(g), Scott repeatedly failed to affix Form 8867, Paid Preparer's Due Diligence Checklist to the returns which she prepared that contained the Earned Income Tax Credit.

78. An injunction against Scott is necessary and appropriate to prevent the recurrence of her conduct subject to penalty under I.R.C. §§ 6694 and 6695.

79. Anything less than a permanent injunction and complete bar on the preparation of tax returns is unlikely to stop Scott from preparing fraudulent tax returns. For numerous years, Scott has evaded detection, utilizing anonymity to prepare fraudulent tax returns. Scott has repeatedly refused to sign the tax return she prepares, has refused to obtain an EFIN or PTIN from the IRS, has failed to report her income from her return preparation, and she has been consistently uncooperative with the IRS during its investigation. Additionally, the schemes she uses in preparing fraudulent tax returns are ongoing. Thus, a permanent injunction and complete

bar on the preparation of tax returns is likely the only remedy that would stop Scott from preparing fraudulent tax returns.

**COUNT II: Injunction under I.R.C. § 7402(a) for Unlawful Interference with Enforcement of the Internal Revenue Laws**

80. The United States incorporates by reference the allegations in all preceding paragraphs above, as though fully set forth herein.

81. Pursuant to I.R.C. § 7402(a), a court is authorized to issue orders of injunctions as may be necessary or appropriate to enforce the internal revenue laws.

82. I.R.C. § 7402(a) expressly provides that its injunction remedy is "in addition to and not exclusive of" other remedies for enforcing the internal revenue laws.

83. Scott's activities described above substantially interfere with the enforcement of the internal revenue laws because she prepares and files fraudulent tax returns that result in customers not paying their correct federal tax liabilities and receiving tax refunds to which they are not entitled.

84. Scott has shown that she should not be allowed to continue to prepare tax returns because she has deliberately played the "audit lottery" on behalf of her customers. By improperly deducting business expenses on Schedule C items for which the underlying businesses did not exist, she has selected a scheme for which there is no independent third-party reporting and which the IRS can detect only by auditing returns or interviewing her customers. Because she knows that the IRS lacks the resources to audit every return that includes these schedules, Scott is actively subverting the American tax system, which relies on taxpayers to self-report their income and expenses fully and accurately.

85. An injunction prohibiting Scott from preparing or assisting in the preparation of tax returns is needed to stop her from preparing and filing fraudulent tax returns and to prohibit

her from otherwise interfering with the proper administration and enforcement of the internal revenue laws now and in the future.

86. An injunction also is justified because Scott has engaged in repeated acts intended to evade the detection of her tax return preparation activities, including her refusal to sign the tax returns she prepares, her refusal to obtain an EFIN or PTIN from the IRS, her failure to report her income from her return preparation, her conduct in requesting only cash payments, and her lack of cooperation with the IRS during its investigation.

87. If Scott is not enjoined, the United States will continue to suffer irreparable harm from her customers underpaying their taxes and causing the IRS to expend some of its limited resources to examine the false and fraudulent returns she has prepared. By contrast, Scott will not suffer any cognizable harm by being enjoined from acting as a tax return preparer given that she does not even admit to preparing returns on her or others' tax returns and that, when acting as a tax return preparer, she prepares fraudulent returns that harm the United States.

88. The public interest would be advanced by enjoining Scott because an injunction will stop her illegal conduct and the harm that conduct is causing the United States Treasury and the public.

89. An injunction under I.R.C. § 7402 is necessary and appropriate, because the United States has no adequate remedy at law.

**WHEREFORE**, the United States of America prays for the following:

A. That the Court find that Scott has repeatedly engaged in conduct subject to penalty under I.R.C. §§ 6694 and 6695, and in other fraudulent or deceptive conduct that substantially interferes with the proper administration of the tax laws; that, pursuant to I.R.C. § 7407, an injunction merely prohibiting conduct subject to penalty under I.R.C. §§ 6694 and

6695, or other fraudulent or deceptive conduct, would be insufficient to prevent her interference with the proper administration of the tax laws; and that Scott should be permanently enjoined from acting as a tax return preparer;

      B.      That the Court find that Scott has interfered with the enforcement of the internal revenue laws and that injunctive relief is appropriate to prevent the recurrence of that conduct pursuant to I.R.C. § 7402(a);

      C.      That this Court, pursuant to I.R.C. § § 7402(a) and 7407, enter a permanent injunction enjoining Scott, her officers, agents, servants, employees, and attorneys, and anyone in active concert of participation with her, from directly or indirectly:

      1. Preparing or assisting in the preparation of federal tax returns, amended returns, and other related documents and forms for anyone other than themselves;

      2. Advising, counseling, or instructing anyone about the preparation of a federal tax return;

      3. Filing or assisting in the filing of a federal tax return for anyone other than themselves;

      4. Owning, managing, controlling, working for, or volunteering for a tax return preparation business;

      5. Advertising tax return preparation service through any medium, including internet and social media.

      6. Maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

      7. Representing customers in connection with any matter before the IRS;

8. Employing any person to work as a federal income tax return preparer for others;

9. Providing office space, equipment, or services for, or in any other way facilitating, the work of any person or entity that is in the business of preparing or filing federal tax documents or forms for others or representing persons before the IRS;

10. Referring any customer to a tax preparation firm or a tax return preparer, or otherwise suggesting that a customer use any particular tax preparation firm or tax return preparer;

11. Selling, providing access, or otherwise transferring to any person some or all of the proprietary assets of Scott generated by her tax return preparation activities, including but not limited to customer lists; and/or

12. Engaging in any conduct that substantially interferes with the administration and enforcement of the internal revenue laws.

D. That this Court, pursuant to I.R.C. § § 7402(a) and 7407, enter a permanent injunction enjoining Scott, her officers, agents, servants, employees, and attorneys, and anyone in active concert or participation with her or with them, from directly or indirectly operating a business that prepares federal tax returns;

E. That the Court enter an order requiring Scott to prominently post a copy of its permanent injunction (with dimensions of at least 12 by 24 inches) at all physical locations where Scott conducts business and requiring Scott to prominently post an electronic copy of the permanent injunction on any website or social media site or social media profile that Scott maintains or creates over the next five years;

F. That the Court, pursuant to I.R.C. §§ 7402(a) and 7407, enter an order requiring Scott to produce to counsel for the United States, within 30 days of the Court's order, a list that identifies by name, social security number, address, email address, and telephone number and tax period(s) for all persons for whom she prepared federal tax returns or claims for refund, for tax years beginning 2015 and continuing through this litigation;

G. That the Court, pursuant to I.R.C. §§ 7402(a) and 7407, enter an order requiring Scott within 30 days of receiving the Court's order, to contact by email, or if a current email address is not known by U.S. mail, all persons for whom she has prepared federal tax returns, amended tax returns, or claims for refund since January 2016, as well as all employees or independent contractors Scott has had since January 2016, and to inform them of the permanent injunction entered against her by sending each of them a copy of the order of permanent injunction, with no other enclosures unless approved by the Department of Justice;

H. That this Court grant the Untied States such other relief as the Court deems appropriate.

UNITED STATES OF AMERICA

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/ Julia M. Glen*
JULIA M. GLEN
JORDAN A. KONIG
Trial Attorneys, Tax Division,
U.S. Department of Justice
Post Office Box 55, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 514-6484 (Glen)
       (202) 305-7917 (Konig)
Fax: (202) 514-5238
Email: Julia.M.Glen@usdoj.gov
       Jordan.A.Konig@usdoj.gov

18